## A01A0265. CHEROKEE COUNTY et al. v. MARTIN.
### (559 SE2d 138)

MILLER, Judge.

At Steve Martin's request, Cherokee County rezoned his property to a "Planned Unit Development" (PUD) classification based on his site plan showing that a portion of the property would be used for an "assisted living" facility. Cherokee County did not make the zoning conditional on compliance with the site plan. When Martin sought a development permit to build a multi-family apartment building in the designated area, Cherokee County refused the permit, explaining that only an assisted living facility could be built there. The question on appeal is whether Cherokee County's failure to expressly condition the PUD zoning on compliance with the proposed site plan (a procedure available under its ordinance) nevertheless allowed it to insist on strict compliance with that plan. We hold it did not and therefore affirm the trial court's judgment in favor of Martin.

Easlan Capital of Atlanta, Inc. filed a rezoning application on behalf of itself and Martin to have their adjoining properties reclassified as PUD. The mixed use development was to consist of single family residential lots on Easlan Capital's property and assisted living units and retail and office buildings on Martin's property. The application urged that the community needed "assisted living for the elderly." The summary of the proposal referred to the assisted living units as "MultiFamily" units having no less than 500 square feet each. The attached site plan displayed an assisted living facility with 142 units.

In September 1998 the Cherokee County Board of Commissioners approved the rezoning request without condition, passing a resolution reclassifying the properties as PUD. Martin was unable to market the assisted living facility to any buyers but discovered interest for a multi-family apartment building. He applied for a development permit to build the retail and office space originally indicated on the site plan (with the addition of a gasoline station) as well as nine apartment buildings containing 160 units. The county denied the permit on the grounds that gasoline stations are not allowed in PUD districts and that Martin could build only assisted living units, of which there could be only 142.

Martin sued Cherokee County and its commissioners and zoning director for a declaratory judgment that the PUD classification allowed him to build the gasoline station and the proposed apartment buildings. Following a bench trial, the court ruled that a gasoline station was not a permitted use for PUD property. The court further ruled that the PUD classification allowed Martin to build the proposed multi-family apartment buildings in the place of the origi-

nally proposed assisted living facility. The court reasoned that assisted living units were simply a form of multi-family units and that absent a condition requiring Martin to build only assisted living units, the rezoning resolution entitled him to build any type of multi-family units. Regarding the allowed number of units, the court said it could not rule on such until Easlan Capital stipulated to the total number of single family units it was going to build.

Cherokee County has appealed the ruling insofar as it allows multi-family units. The county contends that the court misinterpreted the zoning ordinance when it held that Cherokee County's approval of an application to rezone a property is not conditioned on compliance with the site plan submitted in support of the rezoning application. Martin has not appealed any portions of the order.

1. The construction of a zoning ordinance is a question of law for the courts.[1] In construing such an ordinance, we consider the general rule that the owner of land in fee has the right to use the property for any lawful purpose.[2] Since zoning ordinances restrict an owner's right to freely use his property, they are in derogation of common law.[3] Thus, they must be strictly construed in favor of the property owner and never extended beyond their plain and explicit terms.[4] Any restrictions must be clearly established,[5] and "ambiguities in the language of zoning ordinances should be resolved in favor of the free use of property."[6]

Based on these principles, a court should not infer that the zoning classification of a property is conditioned on any particular uses of that property; rather, such a condition must be expressly made within the four corners of the rezoning resolution.[7] A rezoning resolution, unconditional upon its face and containing no reference to any stipulations or qualifications, cannot be converted into conditional zoning by discernment of the collective state of mind of the rezoning

---

[1] *DeKalb County v. Post Apt. Homes*, 234 Ga. App. 409, 411 (1) (506 SE2d 899) (1998), citing *Ervin Co. v. Brown*, 228 Ga. 14, 15 (183 SE2d 743) (1971).

[2] *Piccadilly Place Condo. Assn. v. Frantz*, 210 Ga. App. 676, 678 (1) (436 SE2d 728) (1993).

[3] *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 343 (1) (a) (478 SE2d 373) (1996).

[4] Id.; accord *DeKalb County*, supra, 234 Ga. App. at 410 (1).

[5] *Piccadilly Place Condo. Assn.*, supra, 210 Ga. App. at 678 (1).

[6] (Punctuation omitted.) *DeKalb County*, supra, 234 Ga. App. at 410 (1), quoting *Fayette County v. Seagraves*, 245 Ga. 196, 197 (1) (264 SE2d 13) (1980); accord *Trubey v. Hall*, 237 Ga. App. 498, 499-500 (1) (515 SE2d 639) (1999).

[7] See *Martin v. Hatfield*, 251 Ga. 638, 639 (2) (308 SE2d 833) (1983). As in *Martin*, a rezoning resolution is often referred to as the zoning ordinance, in that the resolution amends the map attached to the zoning regulation to reflect that the subject property has received a new classification. For the sake of clarity in this opinion, we use the word "resolution" to refer to the county's action in approving or denying a rezoning application, and we use the word "ordinance" to refer to the governing regulation.

body at the time of adoption.[8] Rezoning is conditional only if the conditions are set forth in the rezoning resolution itself or if an examiner of the resolution would be alerted to the existence of such conditions.[9] Examples include (1) naming the zoning classification "Residential Conditional,"[10] (2) stating the condition in the rezoning resolution,[11] and (3) passing a rezoning resolution "pursuant with stipulations presented by [the applicant]," which stipulations are recorded in the county board's official public minutes.[12]

Cherokee County's zoning ordinance comports with these principles. Section 18.3-3 requires site plans, also known as master development plans, to be submitted in support of all rezoning requests for PUD.[13] Section 18.3-2 (d), however, provides that "[a]ny site[ ] plans, renderings, or other exhibits depicting construction or development which are submitted by the applicant *may be recommended as a condition of rezoning* by the Planning Commission. . . ."[14] If the Board of Commissioners decides to act on this recommendation and to require the applicant to use the property only as portrayed in the site plan, then the Board under Section 18.3-2 (e) could "specify as part of the zone district classification the particular use or uses proposed by the applicant" by including the suffix "c" on the zone district designation found in the rezoning resolution and in the amended official zoning map.[15] Further provisions state that the Planning Commission "may recommend approval, *approval with conditions*, or denial" of the rezoning proposal and shall include appropriate "recommendations for conditions or limitation on uses."[16] After receiving such recommendations, the Board may approve or disapprove them or approve them "with modifications or conditions."[17]

As the ordinance specifies the procedure for attaching conditions to a rezoning and particularly the procedure for requiring a landowner to abide strictly by his site plan, we conclude that other means are ineffective.[18] Otherwise, these provisions of the ordinance would

---

[8] Id.

[9] Id.; see *Trubey*, supra, 237 Ga. App. at 500-501 (1).

[10] *Michiels v. Fulton County*, 261 Ga. 395 (1) (405 SE2d 40) (1991).

[11] *Cross v. Hall County*, 238 Ga. 709, 712-713 (2) (235 SE2d 379) (1977). Indeed, undisputed evidence showed that historically Cherokee County had placed any conditions at the bottom of or attached to the rezoning resolution.

[12] (Punctuation omitted.) *Ervin Co.*, supra, 228 Ga. at 14, hn. 1.

[13] See 1992 Zoning Ordinance of Cherokee County (as amended), Section 18.3-3.

[14] (Emphasis supplied.)

[15] Evidence showed that on the Cherokee County official map properties zoned with conditions were noted with a handwritten notation "w/cond." Notations on the official map are considered binding. See Zoning Ordinance, supra, Section 6.2.

[16] (Emphasis supplied.) Zoning Ordinance, supra, Section 18.3-10 (a).

[17] Id., Section 18.3-11.

[18] Cf. *Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995) (the express mention of one thing in a statute implies the exclusion of another).

be mere surplusage, a result we should avoid in construing zoning ordinances.[19]

Here the rezoning resolution contained no language referencing conditions or requiring Martin to abide by the particular uses specified in his site plan. Indeed, the county conceded at trial that "there are no conditions." We also decline to infer any such conditions and therefore hold that Martin was not bound to strictly comply with the site plan.

2. Nor were there any ordinance provisions that prevented Martin from constructing a multi-family dwelling. Two ordinance provisions restricted Martin's use of the land following the passage of the PUD rezoning resolution. Table 7.2 of the zoning ordinance specifies those "Permitted Uses" for which PUD property may be used. Included in those uses is "Multi-Family Dwelling," which the ordinance defines as "[a] dwelling containing more than two dwelling units."[20] Such would include triplexes, quadruplexes, townhouses, apartment buildings, and, by definition, a 142-unit assisted living facility, particularly where such a facility is not listed elsewhere in Table 7.2 as a separate "Permitted Use." Thus, an assisted living facility was merely one form of a permitted multi-family dwelling.

The second provision restricting Martin's use was Section 8.8 (E), which required him to submit (for approval and hearing by the Board) a written request for major or substantial changes to his site plan. It defines "a major change" as "a change of density (units per acre), a change of land use category, a change of location of a roadway, a change of right-of-way of a roadway, a decrease in buffers or screening mechanisms, or an addition or reduction of acreage." The county argues that the change from assisted living units to multi-family apartment units was a "change of land use category" and therefore had to be approved by the Board. Martin counters that a "change of land use category" refers to changing the zoning classification of the property from PUD to something else.

Neither party is correct. Table 7.2 of the zoning ordinance outlines 160 "Permitted Uses" and designates which are allowed for each type of zoning classification. Forty are designated for the PUD classification. A "change in land use category" is a change from one permitted use to another permitted use within the 40 permitted by the PUD classification. Although the county concedes this point, it argues that "multi-family dwelling" is a listed permitted use and that an "assisted living facility" is a separate nonlisted use that the county for purposes of this particular rezoning was willing to stipulate would be permitted.

---

[19] See *DeKalb County*, supra, 234 Ga. App. at 412 (1).
[20] Zoning Ordinance, supra, Section 4.3

The fatal flaw in the county's analysis is its unspoken assumption that under the zoning ordinance, an assisted living facility does not fall within the definition of a multi-family dwelling and therefore must be considered as a separate permitted use. As discussed above, however, the ordinance's definition of a multi-family dwelling as a dwelling containing more than two dwelling units necessarily includes a 142-unit assisted living facility within that definition.[21] Just as triplexes, quadruplexes, apartment buildings, and townhouses are not separately listed as permitted uses in Table 7.2, so an assisted living facility as another type of multi-family dwelling is not separately listed as a permitted use. As all of these buildings are included in the broad definition of "multi-family dwelling," they need not be separately listed. If they had to be separately listed, then their current absence from Table 7.2 would mean that under Section 7.8-1 of the zoning ordinance (all nonlisted uses are prohibited), none of them could be built anywhere in Cherokee County. We will not infer such an intent.

The importance of this conclusion is that when Martin sought to build multi-family apartment buildings in the place of an assisted living facility, he was not proposing a "change in the land use category," but was merely seeking to build another type of multi-family dwelling. Accordingly, he was not proposing a "major change" under Section 8.8 (E) that required further Board approval. And since the rezoning resolution did not condition rezoning on Martin's abiding strictly by his site plan which showed the assisted living facility, he was free to build another type of multi-family dwelling in its stead. For these reasons, the trial court did not err in declaring that the PUD zoning accorded Martin's property allowed the multi-family units proposed by Martin in his effort to obtain a development permit.

3. In its appellate brief, the county implicitly raises an argument that such an interpretation of the zoning ordinance violates the due process provision of the Georgia Constitution. As this issue was not raised and ruled on below, we will not consider it.[22]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

---

[21] The parties also understood that an assisted living facility was a multi-family dwelling. In Martin's original rezoning application, the terms "assisted living facility" and "multi-family" were used interchangeably. The "Planning and Zoning" county employee commenting on the application similarly referred to the units as "MF" or "Multiple-Family Residential."

[22] *Angell v. Hart*, 232 Ga. App. 222, 223 (2) (501 SE2d 594) (1998); see *First Pentecostal Church v. City of Atlanta*, 144 Ga. App. 718, 719 (4) (242 SE2d 357) (1978).

DECIDED JANUARY 23, 2002.

*Freeman, Mathis & Gary, Theodore Freeman, Dana K. Maine, John D. Thalhimer,* for appellants.
*Brockman & Teague, James S. Teague, Jr., Sams & Larkin, Joel L. Larkin,* for appellee.