S05A0202. SCREVEN COUNTY PLANNING COMMISSION et al.
v. SOUTHERN STATES PLANTATION, LLLP et al.

(614 SE2d 85)

SEARS, Presiding Justice.

The appellants, the Screven County Planning Commission and other local officials (the "Planning Commission"), appeal from the trial court's judgment granting mandamus relief to the appellee, Southern States Plantation ("SSP"). The trial court ruled that SSP was entitled to have the Planning Commission approve its sketch plan for a subdivision it planned to build in Screven County. We conclude that the trial court properly interpreted a provision of the Land Development Regulations of Screven County in favor of SSP, but that the trial court erred in granting mandamus relief. We thus affirm the trial court's judgment in part and reverse in part.

In 2002, SSP submitted a sketch plan to the Planning Commission for the development of Runs Branch Subdivision. The plan called for the development of 32 lots. Under the plan, some of the lot owners in the subdivision would access the subdivision through two existing, unpaved county roads. The Planning Commission was concerned with whether the two unpaved county roads should be paved as a condition to approving the sketch plan. In this regard, the Planning Commission discussed both Section 6.1 and 6.8 of the Land Development Regulations. As for road or street requirements, Section 6.1 provides that "small subdivisions," consisting of six to ten lots, shall have "paved streets, provided, however, that paving shall not be required if all lots are located on the right-of-way of an existing county road." As for "intermediate subdivisions" such as Runs Branch, consisting of 11 to 49 lots, Section 6.1 simply states that there shall be "paved streets." Section 6.8 provides that the Planning Commission "shall not approve a subdivision in a location where the existing roads providing primary access are inadequate to serve the additional traffic generated by the development." Although the Planning Commission discussed Section 6.8 and expressed concern that the existing, unpaved roads were inadequate to serve the additional traffic generated by the subdivision, the Planning Commission made no finding based on Section 6.8. Instead, the Planning Commission

stated that it interpreted Section 6.1 to require the paving of the county roads, and it specifically denied the sketch plan based on that interpretation. Moreover, on appeal to the Board of Commissioners, the Board also specifically stated that it would uphold the Planning Commission's decision on the ground that Section 6.1 required the paving of the county roads.

After the Board of Commissioners upheld the decision of the Planning Commission, SSP filed this mandamus action in superior court. The court ruled that Section 6.1 was ambiguous regarding whether it required the paving of existing county roads or whether it only required the paving of interior streets built as part of the subdivision. After finding this ambiguity, the court construed the regulation in favor of SSP, and held that the Planning Commission could not require the paving of the county roads under Section 6.1. The court then ruled that, "as evidence was presented which showed that the development of Runs Branch would not have a significant impact on traffic in the area, [SSP has] a vested right to the approval of their sketch plan."

1. The Planning Commission first contends that the trial court erred in ruling that Section 6.1 was ambiguous and could not be construed to require the paving of the two existing, unpaved county roads. For the reasons that follow, however, we agree with the trial court's ruling.

The key issue is whether the word "streets" in Section 6.1 refers only to interior streets of a subdivision that will be constructed as part of the subdivision or also refers to existing public roads that abut a proposed subdivision. In construing the ordinance, we bear in mind that "ambiguities in a zoning ordinance must be resolved in favor of the property owner."[1] Applying this rule of construction in this case leads us to conclude that the trial court properly construed the ordinance.

First, several provisions in the regulations discuss the development of streets in subdivisions, and arguably contemplate the construction and paving of streets that do not exist and not the paving of existing, unpaved county roads.[2] For example, Section 6.2.6 provides that "[s]treet grading, base preparation, and surfacing shall be carried out by the sub-divider according to plans and specifications

---

[1] *JWIC, Inc. v. City of Sylvester*, 278 Ga. 416, 417 (603 SE2d 247) (2004); *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 342-343 (478 SE2d 373) (1996); *Cherokee County v. Martin*, 253 Ga. App. 395, 396 (559 SE2d 138) (2002).

[2] Because all of the regulations in Section 6 deal with required improvements for subdivisions, Section 6.1 must be construed in relation to the other regulations in Section 6. *Mathis v. Cannon*, 276 Ga. 16, 26 (573 SE2d 376) (2002).

approved by the County or the Georgia Department of Transportation." Moreover, Section 6.5 provides that subdivision streets shall be deeded to the county "following proper construction" and that "[c]onstruction of streets and roads, and paving where required, shall be completed prior to Final Plat approval." These provisions appear to contemplate that the developer will construct the subdivision streets as part of the development and not that the developer will simply pave an existing county road.

Moreover, Section 6.2.10 provides that "[i]n all subdivisions, regardless of size, if the minimum lot size is less than 20,000 square feet or the minimum width is less than 100 feet, paving will be required for all streets, including private streets, within the subdivision." Again, arguably, the phrase "within the subdivision" appears to contemplate streets that are interior streets of the subdivision and that will be constructed as part of the development of the subdivision. In addition, a construction that includes existing county roads within the term "streets" could lead to unreasonable results. If "streets" includes existing county roads, Section 6.2.10 would require a developer, regardless of the number of lots in the developer's subdivision, to pave an existing, unpaved county road if the subdivision lots were of less than 20,000 square feet or less than 100 feet wide. Thus, a developer building a subdivision with just five small lots would be required to pave an existing county road that provided access to the subdivision. Moreover, if the unpaved county road on which the subdivision would be located was several miles long, the Planning Commission's interpretation of Section 6.1 would require the developer to pave either the small stretch of unpaved road adjacent to the subdivision or to pave the entire stretch from the nearest paved road to the subdivision. Either of these results is unreasonable.

For the foregoing reasons, we conclude that Section 6.1 is at least ambiguous concerning whether it requires the paving of existing, unpaved county roads that abut a proposed subdivision. Accordingly, the trial court properly construed Section 6.1 in favor of SSP so as not to require the paving of the two county roads in question.

2. Although we agree with the trial court's conclusion that Section 6.1 is ambiguous and must be construed in favor of the landowners, we disagree with the trial court's conclusion that, "as evidence was presented which showed that the development of Runs Branch would not have a significant impact on traffic in the area, [SSP has] a vested right to the approval of their sketch plan." The evidence regarding the impact of Runs Branch on traffic in the area was in dispute, and the Planning Commission did not deny the sketch plan based on traffic considerations but only on the ground that Section 6.1 required the paving of the county roads. Because Section 6.8 grants the Planning Commission the discretion to determine

whether the "existing roads providing primary access" are adequate "to serve the additional traffic generated by the development," and because the Planning Commission has not exercised that discretion, the trial court erred in ruling that SSP was entitled to approval of its sketch plan.[3]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JUNE 6, 2005.

R. Hubert Reeves III, Jenkins & Olson, Frank E. Jenkins III, Brandon L. Bowen, for appellants.

*Franklin, Taulbee, Rushing, Snipes & Marsh, Wesley C. Taulbee, Stephen T. Rushing*, for appellees.

---

[3] See *Fulton County v. Congregation of Anshei Chesed*, 275 Ga. 856, 859-860 (572 SE2d 530) (2002) (In reviewing a discretionary decision of a local governing body, a superior court is required to determine if there is any evidence to support the local governing body's decision and thus may not undertake a de novo review of the evidence presented to the governing body.).