**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 24, 2015**

# In the Court of Appeals of Georgia

A14A2020. GOLDEN ISLES OUTDOOR, LLC v. THE LAMAR
    COMPANY, LLC.

ANDREWS, Presiding Judge.

The Lamar Company, LLC ("Lamar") filed an action in the Superior Court of Chatham County appealing a decision by the City of Savannah Zoning Board of Appeals (the "ZBA"), which, in response to a petition filed by Lamar's outdoor advertising competitor, Golden Isles Outdoor, LLC ("Golden Isles"), invalidated a permit that allowed Lamar to convert an existing billboard into a digital billboard. In an order on the parties' cross-motions for summary judgment, the trial court reversed the ZBA's decision. We granted Golden Isles' application for discretionary appeal, and Golden Isles now appeals, arguing that the trial court misinterpreted the digital billboard ordinance in the City of Savannah's Code of Ordinances (the "Savannah

Code") when it determined that the ordinance does not prohibit digital billboards on collector roadways such as the one where the billboard at issue is located.[1] We conclude that the trial court erred in its construction of the ordinance and therefore reverse.

This appeal presents a question of law concerning the proper interpretation of the Savannah Code, and we apply a de novo standard of review. *City of Atlanta v. Hotels.com*, 289 Ga. 323, 325 (1) (710 SE2d 766) (2011).

The record shows that Lamar owns a traditional poster billboard located at 322 Mall Boulevard in Savannah. On April 10, 2013, Lamar submitted an application to the Savannah Zoning Administrator for a permit to convert the Mall Boulevard billboard to a digital billboard. Prior thereto, Lamar's competitor, Golden Isles, had submitted applications to convert two of its existing poster billboards to digital billboards. Permits for conversion of Golden Isles' billboards could not be issued absent the Savannah City Council's approval of a pending amendment of the

---

[1] Golden Isles was not named as a defendant in Lamar's superior court action; however, a consent order was entered permitting Golden Isles to intervene. The defendants in the superior court action – the Mayor and Aldermen of the City of Savannah, the Zoning Administrator, and the members of the ZBA – are not participating in this appeal.

Savannah Code.[2] By the time the City Council approved the amendment, the Zoning Administrator already had approved Lamar's April 10, 2013 application. Thereafter, one of Golden Isles's two applications for a digital billboard permit was granted. The digital billboard ordinance in the Savannah Code, Savannah Code § 8-3112 (c) (5), provides that no more than three new digital billboards may be authorized after October 7, 2011. Savannah Code § 8-3112 (c) (5) (e) (10). Golden Isles submitted its two applications in hopes of obtaining the last two available permits for digital billboards, but due to the permit Lamar received for the Mall Boulevard site, Golden Isles received only one instead.

Golden Isles submitted a petition for an appeal to the ZBA challenging the validity of the permit for the Mall Boulevard location. Golden Isles argued that the permit was contrary to the digital billboard ordinance. That ordinance states, among other things, that digital billboards "shall be permitted only along four lan[e] or more arterial roadways as defined in subsection 8-3112 (l) herein." Savannah Code § 8-

---

[2] The Savannah Code formerly provided that digital billboards were only authorized if an applicant agreed to remove other signs that did not conform with the current code. Golden Isles owned no such signs.

3112 (c) (5) (e) (5) (the "arterial roadway restriction"). Golden Isles maintained that Mall Boulevard is a collector street.

After examining the language of Savannah Code § 8-3112 (l), which governs separate use signs[3] generally, the ZBA concluded, in essence, that the arterial roadway restriction contains a drafting error. The ZBA noted that while the arterial roadway restriction refers to subsection 8-3112 (l) to define "four lan[e] or more arterial roadways," that subsection does not reference a street classification map that defines roads as arterial or collector. The ZBA concluded that the correct map reference should have been the street classification map referenced in Savannah Code § 3025 (g), which designates Mall Boulevard as a collector street. Based on the foregoing, the ZBA agreed with Golden Isles that the permit for the Mall Boulevard location was issued in error and should be rescinded.

In Lamar's action appealing the ZBA's determination, the superior court reached a contrary conclusion, reasoning that the term "four-lane arterial roadways" is defined by reference to the language in Savannah Code § 8-3112 (l) (1) stating that

---

[3] A separate use sign is "[a]n off-premises sign which advertises or directs attention to businesses, products, services or establishments not usually conducted on the premises on which the sign is located." Savannah Code § 8-3002. It is undisputed that billboards, digital and traditional, constitute separate use signs.

separate use signs "shall only be permitted on a site which abuts a street classified as a collector or arterial roadway." The superior court concluded that the term "four-lane arterial roadway" in the arterial roadway restriction encompasses four-lane arterial *and* collector roads.

1. In its single enumeration of error, Golden Isles argues that the trial court erred in its construction of the arterial roadway restriction by, among other things, failing to construe it in a manner that harmonizes it with the zoning provisions of the Savannah Code generally and that effectuates the legislative intent reflected in the legislative history of the digital billboard ordinance.

In considering the meaning of a municipal ordinance, we apply the same well-settled principles that guide our construction of statutes. See *Daniel Corp. v. Reed*, 291 Ga. 596, 597 (732 SE2d 61) (2012). The "cardinal rule" in construing a legislative act is to ascertain and effectuate the legislative intent and purpose. *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003). "Legislative intent is determined from consideration of the entire [ordinance]; thus we consider a provision [of an ordinance] not in isolation, but in the context of the other [ordinance] provisions of which it is a part." (Citation and punctuation omitted.) *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014). In addition, if the meaning of

5

an ordinance is doubtful, we may look to legislative history to ascertain legislative intent. *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997).

To determine the legislative intent underlying the arterial roadway restriction, we first examine its larger legislative context. As set forth above, the arterial roadway restriction states that digital billboards "shall be permitted only along four lan[e] or more arterial roadways as defined in subsection 8-3112 (l) herein." Savannah Code § 8-3112 (c) (5) (e) (5). This restriction appears in Article E of Chapter Three of Part Eight of the Savannah Code. Chapter Three contains the Savannah Code's zoning ordinances generally while Article E regulates signs in particular. Savannah Code § 8-3002 supplies definitions applicable throughout the zoning ordinances. "Road," is defined as "[a]ny street, highway, avenue, lane, marginal access street, service drive, alley, bridge, viaduct or any segment thereof."[4] Section 8-3002 includes separate definitions for collector road, major arterial road, and secondary arterial road, all of which state: "See Road classification map of the city." The definitions for collector

---

[4] We note that Savannah Code § 8-3002 does not define "roadway," which appears in the arterial roadway restriction and Savannah Code § 8-3112 (l); however, roadway is generally synonymous with the term "road." See TheFreeDictionary.com, http://www.thefreedictionary.com/roadway (defining "roadway" as "A road, especially the part over which vehicles travel.") (citing American Heritage Dictionary of the English Language (5th ed. 2011)) (last visited March 16, 2015).

road and major and secondary arterial roads do not specify a particular map number, but the parties are in agreement that "Street Classification Map No. 1 of Chatham County," which is referenced and incorporated in Savannah Code § 8-3025 (g), designates which streets fall into these classifications. Mall Boulevard, the billboard site at issue in this case, is designated as a collector street on Street Classification Map No. 1. The definitions, Street Classification Map No. 1, and the other zoning ordinances made a part of the record here shed little light on what distinguishes a collector from an arterial street or road. It is clear, however, that as a general matter, collector and arterial streets are separate and distinct classifications, and a street cannot be classified as both at the same time. As set forth in the margin, the sign ordinances in Article E repeatedly refer to and distinguish between arterial and collector streets.[5] None of the foregoing provisions include any specific cross-

---

[5] Savannah Code § 8-3112 (c) (6) (ii) (5) (permitting certain temporary signs "only along an arterial or collector street . . . if no residentially zoned property or dwelling is located within 75 feet of such sign"); § 8-3112 (c) (6) (iii) (3) (public event temporary signs allowed in certain locations subject to certain conditions, including that "[t]he sign shall be located along a collector or arterial street"); § 8-3112 (d) (3) (uses in certain districts "which front a collector or arterial street shall be permitted one stationary freestanding announcement sign per street frontage"); § 8-3112 (k) (3) (a) (chart setting forth maximum copy area for directory signs fronting arterial and collector streets); § 8-3112 (1) (3) (separate use signs permitted within 660 feet of right-of-way of protected highway if "such sign is oriented toward the travel way of a parallel or nearby collector or arterial street. . ."); § 8-3112 (1) (4)

7

reference to a definition or map, but Lamar does not contend that there is any uncertainty regarding the meaning of those terms as used generally in the sign ordinances or dispute that the terms are defined by reference to Street Classification Map No. 1.

Turning to the legislative history of the digital billboard ordinance, the legislative history included in the record reflects that at a City Council meeting on November 20, 2007, a representative of the Metropolitan Planning Commission spoke in favor of an amendment to the Savannah Code allowing digital billboards and explained, among other things, that digital billboards "can only be placed along four-lane[] or more arterial streets." At the same meeting, Lamar's attorney reiterated that the proposed amendment and existing zoning ordinances would impose numerous restrictions on the use of digital billboards and represented that "[t]his has got to be on a four lane or major arterial."

_____

(separate use signs permitted within 660 feet of right-of-way of restricted roadway "where such sign is oriented toward the travel way of a parallel or nearby collector or arterial street. . . "); § 8-3112 (l) (7) (chart setting forth maximum copy area for separate use signs fronting arterial and collector streets); § 8-3112 (l) (9) (b) ("The upper edge of separate use sign panels located along collector or arterial streets or highways . . . shall be no more than 50 feet above the grade at the base of the sign"); § 8-3112 (s) (5) (special announcement sign "must front onto an arterial street"); § 8-3121 (e) (5) (special announcement sign in historic sign district "must front onto an arterial street").

Notwithstanding the foregoing, Lamar posits that "arterial roadway" is *not* defined by Street Classification Map No. 1 for purposes of the arterial roadway restriction because the arterial roadway restriction contains a "unique definitional cross-reference" to Savannah Code § 8-3112 (l). Although Savannah Code § 8-3112 (l) contains 13 detailed subsections regulating separate use signs, Lamar maintains that the cross-reference in the arterial roadway restriction establishes unequivocally that the Savannah City Council intended "arterial roadway" to be defined by the second sentence in § 8-3112 (l) (1), which states: "[separate use] signs shall only be permitted on a site which abuts a street classified as a collector or arterial roadway." Lamar argues, and the trial court agreed, that the plain and unambiguous meaning of the arterial roadway restriction is that arterial roadways include arterial *and* collector streets. This construction cannot withstand scrutiny.

One common meaning of the verb "define," as used in the arterial roadway restriction, is "[t]o state the precise meaning of (a word or sense of a word, for example)." TheFreeDictionary.com, http://www.thefreedictionary.com/define (citing American Heritage Dictionary of the English Language (5th ed. 2011)) (last visited March 16, 2015). Neither the second sentence of § 8-3112 (l) (1) nor any of the other provisions of § 8-3112 (l) purport to define the term "arterial roadway" in this sense.

9

Savannah Code § 8-3112 (l) (1) does not state the precise meaning of arterial roadway or any term; it merely states where separate use signs in general may be located. To treat the second sentence of § 8-3112 (l) (1) as establishing a new and different definition of an arterial road, moreover, would collapse a distinction otherwise carefully drawn throughout the sign ordinances. In construing an ordinance, courts must "consider the results and consequences of any proposed construction and not so construe [an ordinance] as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citation and punctuation omitted.) *Staley v. State*, 284 Ga. 873-874 (672 SE2d 615) (2009). Further, in construing an ordinance, we "reconcile, if possible, any potential conflicts between different sections of the same [ordinance], so as to make them consistent and harmonious." (Footnote and punctuation omitted.) *Sikes*, supra, 268 Ga. at 21 (2). We cannot reasonably conclude that the City Council intended to undermine or undo the otherwise consistent distinction between arterial and collector streets by including a general cross-reference to Savannah Code § 8-3112 (l) in the arterial roadway restriction.

In addition, "courts should construe [an ordinance] to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing [an ordinance] in a way that renders any part of it meaningless." (Footnote

and punctuation omitted.) *Sikes*, supra, 268 Ga. at 21 (2). Under Lamar's construction of the arterial roadway restriction, the term "arterial" amounts to surplusage, because the City Council would have achieved the same result had it left "arterial" out altogether: digital billboards – which are a type of separate use sign, see footnote 3 supra – would be permitted on any collector or arterial road with four or more lanes.

We agree with Golden Isles that we may achieve a more harmonious and reasonable construction of the arterial roadway restriction by considering alternative meanings of "define" for purposes of the restriction. Its definitions include "[t]o specify distinctly," TheFreeDictionary.com, http://www.thefreedictionary.com/define (citing American Heritage Dictionary of the English Language (5th ed. 2011)) (last visited March 16, 2015), and "to fix with precision; specify." Id. (citing Collins English Dictionary (2003)). Viewed in this light, the arterial roadway restriction's cross reference may be read to clarify that the placement of digital billboards on arterial roadways (as defined in Street Classification Map No. 1) must comply with the terms and conditions in § 8-3112 (l) generally. For example, pursuant to Savannah Code § 8-3112 (1) (3) and (4), such signs could only be located within 660 feet of the right-of-way of a protected or restricted roadway if "such sign is oriented toward the travel way of a parallel or nearby . . . arterial street and the sign, including the sign

11

standard, is blocked from view from the travel way of the protected [or restricted] roadway by a permanent structure." Such signs are also subject to specific copy size and height requirements. See Savannah Code § 8-3112 (1) (7) and (9) (b). We conclude that such a construction of the arterial roadway restriction best effectuates the legislative intent and harmonizes the provisions of the zoning ordinances. We are mindful that "zoning ordinances are to be strictly construed in favor of the property owner and any ambiguous language therein is to be resolved in favor of the free use of property;" nevertheless, they "must be given a reasonable construction." *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 343 (1) (b) (478 SE2d 373) (1996). For reasons discussed above, we cannot accept as reasonable an interpretation of the arterial roadway restriction that reads "arterial roadway" to mean arterial *and* collector streets. See *Rock v. Head*, 254 Ga. App. 382, 386 (2) (562 SE2d 768) (2002) (agreeing with trial court's construction of voting provisions of zoning statute rather than construction advanced by party applying to rezone property because it was "more reasonable and consistent with the legislature's intent.").

2. Lamar maintains that construing the arterial roadway restriction to prohibit digital billboards on collector roads violates its due process rights under the U.S. and Georgia Constitution. We are unable to reach this issue. "Our Supreme Court has

12

exclusive appellate jurisdiction over cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn into question, and will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." (Citation and punctuation omitted.) *Mays v. Ellis*, 283 Ga. App. 195, 199 (3) (641 SE2d 0201) (2007). The trial court did not do so here.

Based on the foregoing, we conclude that the trial court erred in its construction of the arterial roadway restriction and that its order granting Lamar's motion for summary judgment and denying Golden Isles' motion must be reversed.

*Judgment reversed. McFadden J., concurs. Ray, J., concurs in judgment only.*