**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2017**

# In the Court of Appeals of Georgia

A17A0647. MONUMEDIA II, LLC v. GEORGIA DEPARTMENT OF TRANSPORTATION.

A17A1127. MONUMEDIA II, LLC v. CITY OF ATLANTA BOARD OF ZONING ADJUSTMENT, et al.

DILLARD, Chief Judge.

In 2013, Monumedia, II, LLC ("Monumedia") installed three signs inside the windows of a building located in the Buckhead area of Atlanta that were visible to traffic on Peachtree Road. Not long after that, the City of Atlanta informed Monumedia that the signs violated City ordinances. And one month later, the Georgia Department of Transportation ("DOT") similarly informed Monumedia that the signs violated the Georgia Outdoor Advertising Control Act ("OACA"), OCGA § 32-6-70 *et seq.* Monumedia challenged the City's decision before the Board of Zoning Adjustment ("BZA"), and challenged the DOT's decision before an administrative

law judge ("ALJ") from the Office of State Administrative Hearings ("OSAH"), but was unsuccessful on both fronts. Monumedia then, separately, sought review of these decisions in the Superior Court of Fulton County, which affirmed the agencies' decisions in both cases.

Monumedia now appeals both decisions, and because these cases arise from the same set of facts, we have consolidated the separate appeals for review. Specifically, in Case No. A17A0647, Monumedia contends that the superior court erred in concluding that OACA regulates signs located inside a building, that its signs can be characterized as "multiple message signs" under the Act, and that the DOT did not bear the burden of showing that an exemption to the permit requirement under the Act was not applicable. In Case No. A17A1127, Monumedia contends that the superior court erred in concluding that the City's sign ordinances prohibited its signs, that the City's violation of the Open Meetings Act did not invalidate the BZA's ruling, and that *ex parte* contacts between City officials and the BZA did not invalidate the latter's ruling. For the reasons set forth *infra*, we reverse in both cases.

The facts relevant to these cases are not significantly disputed. In February 2013, Monumedia began installing three light-emitting diode signs inside windows of the Franco building located at 3075 Peachtree Road in the Buckhead area of

2

Atlanta. After obtaining building and electrical permits from the City, Monumedia completed installation of the signs in August 2013 and began using them at that time. Although the City did not require Monumedia to obtain a permit for the signs prior to their installation, on January 15, 2014, the City notified Monumedia that its signs in the Franco building violated the City sign ordinance applicable to that zoning district, and it ordered Monumedia to remove the signs within 15 days or face fines for failure to do so. On February 18, 2014, the DOT similarly notified Monumedia that two of the signs in the Franco building visible to traffic on Peachtree Road violated the OACA and, thus, directed it to remove them.

Monumedia challenged both the City and the DOT's determinations. With regard to the City's determination, Monumedia appealed to the BZA, arguing that the City's relevant sign ordinance did not require permits for signs visible from the outside but located inside a building. On June 5, 2014, the BZA held an evidentiary hearing on the matter, and on June 10, 2014, it issued a letter denying Monumedia's challenge. Subsequently, Monumedia sought judicial review of that decision in the Fulton County Superior Court. But the case was stayed pending Monumedia's simultaneous challenge of the DOT's determination that the signs also violated the OACA.

In the meantime, as noted *supra*, Monumedia also challenged the DOT's determination that its signs were prohibited, and therefore, the DOT submitted the issue to an OSAH ALJ. On February 16, 2015, the ALJ conducted an evidentiary hearing on the matter, and on November 12, 2015, she issued an initial decision ruling that Monumedia's signs violated the OACA and had to be removed. On January 8, 2016, the DOT issued a final agency decision, adopting the ALJ's ruling. Monumedia then sought judicial review in the Fulton County Superior Court, where its appeal of the BZA decision was pending.

Thereafter, all the parties filed briefs, and on May 19, 2016, the superior court held a hearing on Monumedia's challenge to both the BZA and DOT's rulings. On July 15, 2016, the superior court issued two final orders, affirming the BZA and DOT's decisions prohibiting the signs. Subsequently, Monumedia filed applications for discretionary appeal in both cases, which we granted. These appeals follow.

### Case No. A17A0647

We first address Monumedia's challenge to the superior court's ruling affirming the DOT's decision that the signs in question are prohibited by the OACA. In doing so, we note that the Supreme Court of Georgia has held that

4

judicial review of an administrative decision is a two-step process: because the court reviewing an administrative decision must accept the agency's findings of fact if there is any evidence to support the findings, the court must first determine if there is evidence to support the factual findings; the court then is statutorily required to examine the soundness of the conclusions of law drawn from the findings of fact supported by any evidence.[1]

But importantly, both the superior court and this Court "review conclusions of law de novo."[2] Bearing these guiding principles in mind, we turn now to Monumedia's specific claims of error in this appeal.

1. Monumedia contends that the superior court erred in concluding that the OACA regulates, and thus prohibits, signs located inside a building. We agree.

Tasked with interpreting statutory language, we necessarily begin our analysis with "familiar and binding canons of construction."[3] Indeed, in considering the meaning of a statute, our charge as an appellate court is to "presume that the General

---

[1] *Handel v. Powell*, 284 Ga. 550, 552 (670 SE2d 62) (2008) (punctuation omitted).

[2] *Ga. Dep't of Agric. v. Brown*, 270 Ga. App. 646, 649 (2) (607 SE2d 259) (2004) (punctuation omitted); *accord Welcker v. Ga. Bd. of Examiners of Psychologists*, 340 Ga. App. 853, 854-55 (1) (798 SE2d 368) (2017).

[3] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

Assembly meant what it said and said what it meant."[4] And toward that end, we must afford the statutory text its plain and ordinary meaning,[5] consider the text contextually,[6] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[7] and seek to "avoid a construction that

---

[4] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[5] *See Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text.") (punctuation and citation omitted); *Chan v. Ellis*, 296 Ga. 838, 839 (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning. . . ." (punctuation omitted)).

[6] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___ (II) (B) (133 SCt. 2247, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *accord Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012); *Holcomb*, 329 Ga. App. at 517 (1); *see also Tibbles*, 297 Ga. at 558(1) ("The common and customary usages of the words are important, but so is their context.") (punctuation and citation omitted); *Chan*, 296 Ga. at 839 (1) (same).

[7] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Holcomb*, 329 Ga. App. at 518 (1).

makes some language mere surplusage."[8] In summary, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[9]

Turning to the statute at issue, in explaining the legislative policy behind the OACA, OCGA § 32-6-70 (a) provides:

> The General Assembly declares it to be the policy of this state that the erection or maintenance of *outdoor* advertising in areas adjacent to the rights of way of roads of the state highway system, which roads are also a part of the interstate and primary systems of highways within the state, shall be regulated in accordance with the terms of this part and the regulations promulgated by the commissioner pursuant thereto and that all *outdoor* advertising which does not conform to the requirements of this part is a public nuisance.[10]

And in defining the types of signs to be regulated, OCGA § 32-6-71 (14) provides:

---

[8] *In the Interest of L.T.*, 325 Ga. App. at 592 (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

[9] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[10] (Emphasis supplied).

"Outdoor advertising" or "sign" means any outdoor sign, light, display, device, figure, painting, drawing, message, placard, poster, billboard, or other thing which is designed, intended, or used to advertise or inform, any part of the advertising or information contents of which are visible from any place on the main traveled way of the interstate or primary highway systems.

Construing this statute according to its plain meaning, the word "outdoor" is commonly understood as "[t]hat is done, exists, lives, or is used, out of doors, without the house, or in the open air."[11] And applying the rules of English grammar,[12] the term "outdoor" in this statute modifies "sign," as well as all the other enumerated terms. Indeed, as Monumedia's expert in English grammar explained during the hearing before the ALJ, the "word 'outdoor' controls [the] whole list, including the phrase 'other thing.'" But here, it is undisputed that Monumedia's signs are located *inside* the Franco building. Given these particular circumstances, Monumedia's signs cannot

---

[11] The Compact Oxford English Dictionary 1234 (2d ed. 1991); *see Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 361 (1) (729 SE2d 378) (2012) (looking to dictionary for plain and ordinary meaning of word); *A. A. Prof'l Bail v. State*, 265 Ga. App. 42, 44 (592 SE2d 866) (2004) (same).

[12] *See Deal*, 294 Ga. at 173 (1) (a) (noting that in construing statutory text, "courts sometimes refer to the rules of English grammar . . . inasmuch as those rules are the guideposts by which ordinary speakers of the English language commonly structure their words, and the legislature is presumed to know the rules of grammar" (citation and punctuation omitted)).

be characterized as outdoor signs that are subject to regulation or prohibition under the OACA.[13]

Nevertheless, the DOT argues that the adjective "other" immediately preceding the word "thing" in OCGA § 32-6-71 (14) displaces the adjective "outdoor" as a modifier of "thing," and therefore, "other thing" can be construed as including indoor signs. But putting aside the fact that this construction tortures logic and the rules of English grammar, the DOT's attempt to task the term "other" with such heavy lifting runs afoul of the statutory-construction canon "*ejusdem generis*," which provides:

> [W]hen a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis [i.e., of the same kind or class] with the things specifically named, unless, of course, there is something to show that a wider sense was intended.[14]

---

[13] *See Ne. Ga. Cancer Care, LLC v. Blue Cross and Blue Shield of Ga., Inc.*, 315 Ga. App. 521, 531-32 (1) (b) (i) (726 SE2d 714) (2012) (holding that statute requiring health insurance plan to accept any qualified medical provider who was willing to accept terms or conditions of plan did not apply to for-profit health maintenance organization because statute by its terms was inapplicable to for-profit entities).

[14] *Ctr. for a Sustainable Coast v. Coastal Marshlands Prot. Comm.*, 284 Ga. 736, 737-38 (1) (670 SE2d 429) (2008).

Specifically, the word "other" will generally be read as "other such like," so that "persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated."[15] Consequently, the phrase "other thing" in OCGA § 32-6-71 (14) is more appropriately construed as referring to other modes of *outdoor* advertising.[16]

---

[15] *Standard Oil Co. v. Swanson*, 121 Ga. 412, 415 (49 SE 262) (1904) (citations and punctuation omitted).

[16] *See Ctr. for a Sustainable Coast*, 284 Ga. at 737-39 (1) (holding that, under the principle of *ejusdem generis*, phrase "otherwise alter," as used in statute describing marshlands activities for which a permit must be obtained from Coastal Marshlands Protection Committee, applies only to the extent that runoff alters the marshlands in a direct physical manner akin to removing, filling, dredging, or draining the marshlands and not more expansively to any upland activities that might eventually cause runoff); *Ga. Bd. of Chiropractic Examiners v. Ball*, 224 Ga. 85, 89 (160 SE2d 340) (1968) ("It is a well known rule that in construing a statute where certain acts are specified which are followed by a general expression referring to *other* acts, *such other acts must be of like character with those named*. Ejusdem generis is a rule of construction to ascertain and give effect to legislative intent [as reflected in the plain meaning of the relevant text]." (punctuation omitted) (emphasis added)); *Swanson*, 121 Ga. at 415 ("[When] a statute or other document enumerates several classes of persons or things, and immediately following, and classed with such enumeration, the clause embraces 'other' persons or things, the word '*other*' will generally be read as 'other *such like*,' so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated. This rule is well established in this State." (citations omitted) (emphasis added)); *see also Montgomery Cty. v. Hamilton*, 337 Ga. App. 500, 507 (788 SE2d 89) (2016), *cert. denied* (Feb. 27, 2017) (holding that the canon of *ejusdem generis* applied because "each of the listed services provide for the health, safety, or welfare of the residents of the unincorporated area."); *Longleaf Energy*

10

Finally, the DOT argues that reading the phrase "other thing" to include signs located inside of buildings is consistent with the "legislative intent" behind the OACA, which this Court has stated "is to protect the public traveling along the highway from distractions."[17] But regardless of whether the DOT's construction of the statute would better achieve the General Assembly's aforementioned "intent"

_Associates, LLC v. Friends of Chattahoochee, Inc_., 298 Ga. App. 753, 759 (681 SE2d 203) (2009) ("Under the rule of statutory construction known as 'ejusdem generis,' when a generally described activity such as '_otherwise_ is subject to regulation' follows an enumeration of specifically described activities, the general activity will ordinarily be construed as referring to the same kind or class of activity as the preceding specific activities, unless something shows that a wider sense was intended." (punctuation omitted) (emphasis added)); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF STATUTORY TEXTS 199 (1st ed. 2012) ("The principle of ejusdem generis essentially says just that: It implies the addition of _similar_ after the word _other_."). _Cf. Dep't of Transp. v. Montgomery Tank Lines, Inc._, 276 Ga. 105, 107-08 (1) (575 SE2d 487) (2003) (holding that the phrase of enlargement in the statute providing that "_any_ other element of actual damages recoverable in actions for negligence" showed that a wider sense was intended, and thus, _ejusdem generis_ did not control) (emphasis supplied)).

[17] _Eagle West, LLC v. Ga. Dep't of Transp._, 312 Ga. App. 882, 886 (720 SE2d 317) (2011) (punctuation omitted); _see Holcomb_, 329 Ga. App. at 518 (1) n. 15 (explaining that "[a]s a part of an act passed by the General Assembly and approved by the governor, the [codified] preamble of a statute may properly be considered by our courts to the extent that it sheds light on the meaning of the substantive terms contained in the statute"). _But see generally BellSouth Telecommunications, LLC v. Cobb County_, ___ Ga. App. ___ (802 SE2d 686, 695-97) (2017) (Dillard, J., concurring) (outlining reasons for generally disfavoring any discussion of "legislative intent" in the context of statutory interpretation).

(which, for all of the reasons noted *supra*, we think unlikely), we are charged with

"interpreting the law in accordance with the original and/or plain meaning of the text

at issue (and all that the text fairly implies), as well as with faithfully following the

precedents established by higher courts."[18] And importantly, both our constitutional

system of government and the law of this State "prohibit the judicial branch from

amending a statute by interpreting its language so as to change the otherwise plain

and unambiguous provisions."[19] Here, under the plain meaning of its text, the OACA

only regulates *outdoor* advertising. Thus, the DOT's argument that its interpretation

of the statute more effectively achieves the statute's overall policy concerns should

---

[18] *In re Whittle*, 339 Ga. App. 83, 88-89 (1) (793 SE2d 123) (2016) (punctuation omitted).

[19] *Id.* at 89 (1) (punctuation omitted); *see also Richardson v. State*, 276 Ga. 639, 640 (1) (581 SE2d 528) (2003) ( "Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." (punctuation omitted)).

12

be directed toward the General Assembly, not this Court.[20] Accordingly, we reverse the superior court's ruling.

2. Given our holding in Division 1 *supra*, we need not address Monumedia's remaining enumerations of error in Case No. A17A0647.

*Case No. A17A1127*

Turning to Monumedia's challenge to the superior court's ruling affirming the BZA's decision that the signs in question are prohibited by the City's sign ordinances, we first note "that the construction of a zoning ordinance is a question of law for the courts."[21] And since statutes or ordinances "which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, they must be strictly construed and never extended beyond their plain and explicit

---

[20] *See Gary v. State*, 338 Ga. App. 403, 409 (2) (790 SE2d 150) (2016) ("The remedy for this problem . . . lies with the General Assembly, not with this Court."); *In re Whittle*, 339 Ga. App. at 88 (1) (holding that if appellant's policy arguments are ultimately to prevail, they should be made to our General Assembly, not an appellate court).

[21] *Stanfield v. Glynn Cty.*, 280 Ga. 785, 786 (2) (631 SE2d 374) (2006); *accord City of Dunwoody v. Discovery Practice Mgmt.*, 338 Ga. App. 135, 139 (2) (789 SE2d 386) (2016). The City's sign ordinances are contained in a chapter of the City's zoning ordinance. *See* City of Atlanta Code of Ordinances § 16-28A.001 ("This chapter shall be known and may be referred to as the 'Sign Ordinance of the City of Atlanta.'").

terms."[22] Furthermore, any ambiguities in the language employed in zoning statutes "should be resolved in favor of the free use of property."[23] Bearing these guiding principles in mind, we will now address Monumedia's specific claims of error in this appeal.

3. Monumedia contends that the superior court erred in concluding that the City's sign ordinances prohibited its signs located inside the Franco building. Once again, we agree.

As the Supreme Court of Georgia has held, "[t]he principles that guide our consideration of the meaning of statutes are settled ones, and we apply those same principles when we consider the meaning of an ordinance."[24] Thus, we look first to "the text of the ordinance, and if the text is clear and unambiguous, we look no further, attributing to the ordinance its plain meaning."[25] In doing so, we attribute to

---

[22] *Stanfield*, 280 Ga. at 787 (2) (punctuation omitted); *accord Discovery Practice Mgmt.*, 338 Ga. App. at 139 (2); *Cherokee Cty. v. Martin*, 253 Ga. App. 395, 396 (1) (559 SE2d 138) (2002).

[23] *Stanfield*, 280 Ga. at 787 (2) (punctuation omitted); *accord Golden Isles Outdoor, LLC v. Lamar Co., LLC*, 331 Ga. App. 494, 500 (1) (771 SE2d 173) (2015).

[24] *Daniel Corp. v. Reed*, 291 Ga. 596, 597 (732 SE2d 61) (2012); *accord Golden Isles Outdoor, LLC*, 331 Ga. App. at 496 (1).

[25] *Daniel Corp.*, 291 Ga. at 597.

14

those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears.[26] Additionally, we read the ordinance as a whole "according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending its operation."[27]And importantly, as we consider the meaning of an ordinance, we "remember that it is not to be construed in a vacuum, but in relation to other ordinances of which it is a part, and all ordinances relating to the same subject matter are to be construed together, and harmonized wherever possible."[28]

Focusing on the particular ordinances at issue in this matter, City of Atlanta Code of Ordinances § 16-28A.008 (2) provides: "The following signs shall not be required to obtain a sign permit: . . . [a]ny sign inside a building." Monumedia argues that this section of the City's sign ordinances should end any inquiry as to whether its signs are permitted, as those signs are undisputedly located *inside* the Franco building. But the City argues that the sign ordinances that specifically pertain to the

---

[26] *Id.* (punctuation omitted).

[27] *Id.* (punctuation omitted).

[28] *Id.* (punctuation omitted).

"Buckhead Village District,"[29] where the Franco building is—also undisputedly—located, prohibit Monumedia's signs. In particular, the City cites to three subsections of City of Atlanta Code of Ordinances § 16-28A.010 (19), the first of which, subsection (c) (iii), provides:

> Signs shall be permitted in the SPI-9 District as follows: . . . [t]he combined area of permitted business identification signs shall not exceed ten percent of the total aggregate area of the walls that face the public right-of-way or which face a private drive and are visible from a public right-of-way provided however that at least 60 square feet of combined sign area is allowed. No individual sign shall exceed 200 square feet.

The City also argues that Monumedia's signs are prohibited by § 16-28A.010 (19) (h), which provides: "General advertising signs shall not be permitted." And the City further claims that the signs are prohibited by § 16-28A.010 (19) (i), which states: "No animated, flashing, neon, changing signs or internally illuminated signs shall be allowed."

Given the language in these subsections, the City contends that, although signs located inside a building admittedly do not require permits, such signs can still be

---

[29] *See* City of Atlanta Code of Ordinances § 16-28A.010 (19) (a) - (i) (1995).

regulated and, in fact, prohibited altogether. In further support of this contention, the City notes that, similar to signs inside a building, "incidental signs" also do not require a permit under § 16-28A.008,[30] but are nevertheless specifically regulated by other sections of the City's sign ordinance.[31]

Based on our review of the City's sign ordinances, we agree that signs not requiring permits under § 16-28A.008 can still be regulated. But in light of that same review, we find that, just as it did with regard to incidental signs, the City employed explicit language regulating interior signs when it apparently wished to do so. Indeed, § 16-28A.010 (36), pertaining to the NC District, exemplifies the City's legislative nous in action. Specifically, § 16-28A.010 (36) (c) (iv) (1) provides:

> . . . In addition to the NC District general sign regulations, the following shall also apply to the Cascade Heights NC-6 District: . . . Window signs: Signs visible from the public right-of-way which touch or are

<hr>

[30] *See* City of Atlanta Code of Ordinances § 16-28A.008 (7) (1995) ("The following signs shall not be required to obtain a sign permit: . . . Incidental signs not exceeding 35 square feet in sign area.").

[31] *See* City of Atlanta Code of Ordinances § 16-28A.007 (l) (1995) ("The following general regulations shall apply to all signs located in the city: . . . Incidental signs may be located in any R-G, O-I, R-LC, commercial, industrial, special public interest or planned development district, subject to all other requirements of this chapter 28A and the code of ordinances, provided no such incidental sign shall exceed 35 square feet in area.").

17

located within one foot of any window pane of glass on either the inside or the outside of a building shall be limited to one sign per facade with each sign no larger than six square feet.

But similar language referencing interior or signs inside of windows is notably absent in § 16-28A.010 (19), and, therefore, we do not construe this subsection to prohibit such signs. And our plain reading of the ordinance is in keeping with longstanding tenets of statutory construction: "*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)."[32] Indeed, if the City had desired to regulate signs inside of buildings in the Buckhead Village District, it could have done so as it did in the Cascade Heights District.[33] In any event, and at the very least, the various

---

[32] *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (punctuation omitted); *see also Alexander Props. Group, Inc. v. Doe*, 280 Ga. 306, 309 (1) (626 SE2d 497) (2006) (holding that based on the principles of *expressum facit cessare tacitum* and *expressio unius est exclusion alterius*, the list of actions in a statute is presumed to exclude actions not specifically listed); *Hammock v. State*, 277 Ga. 612, 615 (3) (592 SE2d 415) (2004) (holding that because one subsection of statute expressly excluded application of defense of habitation between members of the same family, other sections that did not contain such limiting language showed that the General Assembly's allowance of such defense).

[33] *See Lucas v. Beckman Coulter, Inc.*, 339 Ga. App. 73, 78 (1) (793 SE2d 119) (2016) (holding that if General Assembly had wished to created an exception to an

sections of the City's sign ordinance at issue here create ambiguity as to whether Monumedia's signs can be regulated, and "the decisive rule of construction in this case is that ambiguities in a zoning ordinance must be resolved in favor of the property owner."[34]

Moreover, in November 2014, well after the BZA concluded that Monumedia's signs violated the City sign ordinance, the City Council of Atlanta amended the ordinance to specifically address signs located inside of buildings. Toward that end, City of Atlanta Code of Ordinances § 16-28A.007 (q) now provides: "Notwithstanding the provisions of Sec. 16-28A.008 (2) certain signs inside of a building may require a permit to demonstrate that such signs conform with the district regulations where said signs function in a manner that is substantially equivalent to

---

immunity provision in one subsection of statute, it could have done so as it did in prior subsection); *WMW, Inc. v. Am. Honda Motor Co., Inc.*, 311 Ga. App. 1, 4 (1) (714 SE2d 689) (2011) (holding that if the General Assembly had meant for a corporate "dealership" or "dealer" to be defined according to the corporation's facilities, it could have done so as it did with a noncorporate or individual dealer in another section of the statute).

[34] *JWIC, Inc. v. City of Sylvester*, 278 Ga. 416, 417 (2) (603 SE2d 247) (2004); *see Screven Cty. Planning Comm'n v. S. States Plantation, LLLP*, 279 Ga. 404, 405-06 (1) (614 SE2d 85) (2005) (holding that county land regulation was at least ambiguous concerning whether it required the paving of existing, unpaved county roads that abut a proposed subdivision and, thus, ruling in favor of the property owner).

signs that would require a permit if placed on the outside of that building." This amendment further evinces the correctness of our conclusion that the ordinance did not previously prohibit signs inside of buildings, "since we must presume that the legislative addition of language to the [ordinance] was intended to make some change in the existing law."[35] Thus, the superior court erred in concluding that the City's sign ordinances prohibited its signs located inside the Franco building. And accordingly, we reverse the superior court's ruling.

4. Given our holding in Division 3, we need not address Monumedia's remaining claims of error in Case No. A17A1127.

For all these reasons, we reverse the superior court's ruling in both cases.

*Judgment reversed in both cases. Ray, P. J., and Self, J., concur*.

---

[35] *Wausau Ins. Co. v. McLeroy*, 266 Ga. 794, 796 (2) (471 SE2d 504) (1996); *see Nuci Phillips Mem'l Found., Inc. v. Athens Clarke Cty. Bd. of Tax Assessors*, 288 Ga. 380, 383 (1) (703 SE2d 648) (2010) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. Furthermore, when a statute is amended, from the addition of words it may be presumed that the legislature intended some change in the existing law." (punctuation and citation omitted)); *Evans v. Gwinnett Cty. Public Sch.*, 337 Ga. App. 690, 693-94 (1) (788 SE2d 577) (2016) (holding that because we presume an amendment was intended as a change to the law and since the legislature expressly added "school districts" to the organizations regulated by the statute, it follows that under the prior law school districts were not included).