A98A2148. DeKALB COUNTY v. POST APARTMENT HOMES, L.P.
(506 SE2d 899)

ELDRIDGE, Judge.

On January 7, 1997, Post Apartment Homes, L.P., plaintiff-appellee ("Post"), purchased 32.59 acres in DeKalb County. Previously, on January 24, 1996, DeKalb County, defendant-appellant, through its Board of Commissioners, passed an ordinance rezoning 28 acres of the property to RM-HD and C-1 zoning classifications, high-density, multi-family zoning classifications that are subject to development conditions.

Prior to the rezoning, Post negotiated the conditions with a group of neighbors on Arborvista Drive, whose homes backed up to the Post development. The neighbors were concerned with the southeast corner of Post's property, because there was a dry creek bed, possible wetlands, and a ravine. Initially, Post agreed to construct a 50-foot buffer along the entire eastern boundary line; however, to satisfy concerns by the neighbors, Post agreed to create behind the initial buffer, at the southeast corner, an 80-foot "no build" box behind some of the Arborvista homes, total 130-foot distance from the eastern property line, and an 80-foot by 140-foot space for a "green space" and detention pond in the southeast corner, partially in the "no build" box. Such special rezoning condition was expressed as follows: "no less than a 130-foot setback will exist between all buildings or parking spaces and [the] shared boundary line." When William and Alicia Gelford, owners of 1216 Arborvista Drive, expressed concern, Post agreed to extend the "no build" box behind their property as well. The rezoning application showed that buildings would abut the "no build" box and that the ravine would not be preserved.

On February 2, 1997, Post filed an application and plans with DeKalb County to obtain a development permit, and on June 25, 1997, DeKalb County issued Post the development permit. On May 29, 1997, Post filed an application and plans with DeKalb County to obtain a building permit, and on July 23, 1997, DeKalb County issued the building permit. The plans showed a building northeast of the Gelford property, which was outside the "no build" box, but within 130 feet measured from an arch from the northwest corner of the Gelford property.

On September 23, 1997, Post commenced construction of the building, which contained 24 apartment units. On January 23, 1998, the Gelfords complained to the Director of Public Works for DeKalb

County that the construction of the building fell within 130 feet of an arch from the northwestern corner of the Gelford property. On January 29, 1998, DeKalb County told Post to stop construction on the building until a "reasonable solution" could be reached with the Gelfords. Post representatives met with the Gelfords, and Mrs. Gelford demanded that two floors be removed from the building already constructed and that she be paid $500,000.

On February 12, 1998, Post brought a declaratory action and sought injunctive relief to prevent DeKalb County from interfering with its rights. DeKalb County answered. DeKalb County admitted in judicio "that the DeKalb County Board of Commissioners rezoned the subject property on January 24, 1996, to the RM-HD and C-1 zoning classifications." DeKalb County also admitted issuing the development and building permits. A hearing was held on April 20, 1998, and testimony and evidence were given; however, the trial court ruled against DeKalb County as a matter of law as to the construction of the rezoning ordinance and for Post that the 130-foot setback was a straight line from the boundary line as a "no build" box rather than as an arch measured from any point along the property line. DeKalb County timely filed its notice of appeal.

1. DeKalb County enumerates as error that the trial court erred in ruling that plaintiff can build within the 130-foot arch at the Gelford property line. We do not agree.

"Since statutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, they must be strictly construed and never extended beyond their plain and explicit terms. [Cits.]" *Duncan v. Entrekin*, 211 Ga. 311, 312 (85 SE2d 771) (1955); accord *Fayette County v. Seagraves*, 245 Ga. 196, 197-198 (264 SE2d 13) (1980). Since the exercise of police power in regulating the use of land infringes upon the landowner's right to its unfettered use of the land, then such regulation of land use is in derogation of common law, requiring strict construction against the county and liberal construction in favor of the landowner. See *Harrison v. City of Clayton*, 261 Ga. 513 (407 SE2d 731) (1991); *Glynn County v. Palmatary*, 247 Ga. 570, 574 (3) (277 SE2d 665) (1981); *City of Douglasville v. Willows, Inc.*, 236 Ga. 488, 490 (3) (224 SE2d 363) (1976); *Tuggle v. Manning*, 224 Ga. 29, 32-33 (159 SE2d 703) (1968). "Georgia follows a majority of states in holding that zoning ordinances should be strictly construed in favor of the property owner, and ambiguities in the language of zoning ordinances should be resolved in favor of the free use of property." *Fayette County v. Seagraves*, supra at 197; accord *Glynn County v. Palmatary*, supra at 574; *City of Cordele v. Hill*, 250 Ga. 628 (300 SE2d 161) (1983). Therefore, any ambiguity or uncertainty in a land regulation ordinance must be construed in favor of the free use of the land. *Bd. of*

*Commrs. of Henry County v. Welch*, 253 Ga. 682 (324 SE2d 178) (1985); *City of Cordele v. Hill*, supra; *Fayette County v. Seagraves*, supra.

"The construction of a zoning ordinance, under the facts, is a question of law for the courts, and in construing it the cardinal rule is to ascertain and give effect to the intention of the lawmaking body. [Cit.]" *Ervin Co. v. Brown*, 228 Ga. 14, 15 (183 SE2d 743) (1971). "In determining the intent of the defendant commission in rezoning the subject property, all of the commission's words used to effect this revision should be given due weight and meaning; however awkward and unusual the language may be, the legislative intent manifested by it must be ascertained and enforced as the law. [Cits.]" Id. at 15. Thus, testimony by county officers cannot change the plain meaning of an unambiguous ordinance; "[n]either should the county be allowed to extend the plain, objective intent of [conditions] by testimony that county officers subjectively meant for it to attach to [more than what it plainly stated]. [Cit.]" *Russell v. Smokerise Bath & Racquet Club*, 243 Ga. 724 (256 SE2d 457) (1979); see also *City of Douglasville v. Willows, Inc.*, supra at 490; *Taylor v. Shetzen*, 212 Ga. 101, 102 (4) (90 SE2d 572) (1955). "If any such restriction[, i.e., setback distance measured by an arch from any point on the eastern property line,] was intended, it should have been clearly expressed in the ordinance. [Cits.]" *City of Douglasville v. Willows, Inc.*, supra at 490.

The rezoning ordinance states in pertinent part: "no less than 130-feet setback will exist between all buildings or parking spaces and [the] shared boundary line." A setback line describes a line parallel to a boundary line. The rezoning ordinance plainly describes two equal parallel lines, i.e., the shared boundary line and the setback line, 130 feet away. Since building or parking could not occupy the space in between these two lines, then this describes a rectangle, i.e., a box. When the shared boundary line stops, then the setback line stops, because the ordinance does not describe an arch but describes parallel lines that never intersect; an arch would intersect the shared boundary line. The "no build box" plainly does not include within its meaning both a rectangle and an "arch," because a rectangle is complete in itself and is an entirely different geometric configuration from an arch, which is dependent upon two undefined points to be determined as the beginning and the end points.

Therefore, "[w]here the language of the [ordinance] is plain and unambiguous, and does not lead to contradictory, absurd, or wholly impracticable results, it is the sole evidence of legislative intent and must be construed according to its terms. [Cits.]" *Evans v. Dept. of Transp.*, 226 Ga. App. 74, 75 (1) (485 SE2d 243) (1997). Thus, the meaning of the restriction "no build box" cannot be reasonably con-

strued to include the contradictory meaning of "arch."

*Corey Outdoor Advertising v. Bd. of Zoning Adjustment &c. of Atlanta*, 254 Ga. 221, 222 (1) (327 SE2d 178) (1985), is inapplicable, factually and legally, to this case. In that case, the nature and purpose of the particular ordinance in question were the regulation of signs by size and location in a historic district to prevent visual pollution, which gave a greater public interest to the City of Atlanta's exercise of police powers than a mere new sign erection. Therefore, under the peculiar language of that sign ordinance, measurement from the nearest portion of the sign to the nearest property line of the historic site was clear, plain, and appropriate, rather than to follow the street line as urged by *Corey*, the appellant, which would cause the sign to fall outside the prohibited sign-free perimeter of the site. That case did not stand for the legal proposition that all measurements in an ordinance should be made in such fashion. The *purpose* of that ordinance was to preserve the historic vista of Rhodes Hall from being blocked by a new, giant, three-directional billboard on top of Zesto's at Peachtree and Spring Streets that would obstruct the view of Rhodes Hall in one direction and act as a background for it from the other.

This rezoning ordinance is subject to the canons of statutory construction like any other statute as a question of law. *Risser v. City of Thomasville*, 248 Ga. 866 (286 SE2d 727) (1982); *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (476 SE2d 53) (1996); *First Union Nat. Bank of Ga. v. Collins*, 221 Ga. App. 442, 444 (471 SE2d 892) (1996); *Hogan v. DeKalb County*, 196 Ga. App. 728, 729 (397 SE2d 16) (1990). All parts of an ordinance relating to the same subject matter must be harmonized to reconcile conflicts, and any section of an ordinance must be construed in relation to the whole ordinance of which it is a part. *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476) (1994); *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299) (1981); *Head v. H. J. Russell Constr. Co.*, 152 Ga. App. 864, 865 (264 SE2d 313) (1980). Meaning must be given "to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. [Cits.]" *Moritz v. Orkin Exterminating Co.*, 215 Ga. App. 255, 256-257 (450 SE2d 233) (1994); see also *Porter v. Food Giant*, 198 Ga. App. 736, 738 (1) (402 SE2d 766) (1991). "Language in an ordinance will be given a reasonable and sensible interpretation in order to carry out legislative intent and render an ordinance valid. [Cits.]" *Mayor &c. of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980); see also *State v. Nix*, 220 Ga. App. 651, 652 (1) (469 SE2d 497) (1996). Absent a definition within the ordinance, a reasonable and appropriate definition must be provided by the court. *Bell v. Barrett*, 241 Ga. 103, 104 (243 SE2d 40) (1978). Thus, the trial court

did not err in the construction of the special condition of the rezoning ordinance.

2. Since the meaning of the ordinance can be determined upon the face of the ordinance without resort to evidence to determine intent, then the second enumeration of error is not addressed as moot.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 16, 1998 — 

*Jenkins & Nelson, Kirk R. Fjelstul, John I. Nichols*, for appellant.

*Glass, McCullough, Sherrill & Harrold, Kathryn M. Zickert, Shea E. Roberts, Donna J. Nance*, for appellee.

*David D. Blum*, amicus curiae.