**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 2, 2019**

# In the Court of Appeals of Georgia

A19A0298. CLAYTON COUNTY, GEORGIA v. NEW IMAGE
TOWING AND RECOVERY, INC.

MARKLE, Judge.

In this appeal, we are asked to decide whether the Clayton County Board of

Zoning Appeals ("BZA") may require a business license permit applicant to comply

with sections 6.2 and 6.32[1] of the Clayton County Zoning Ordinance ("the Zoning

Ordinance"), and to submit a site plan of its proposed use of the property to show

such compliance. After the BZA concluded that New Image Towing and Recovery,

Inc. ("New Image") was required to comply with those sections, New Image filed a

petition for writ of certiorari in the Superior Court of Clayton County challenging the

BZA's decision. The superior court reversed the BZA's decision. We granted Clayton

---

[1] These sections set forth certain development standards and requirements for
applicable zoning districts. Section 6.32 addresses parking standards, specifically.

County's ("the County's") application for discretionary appeal, and the County now appeals, arguing that the superior court applied an improper standard of review and erred in refusing to consider Article 1 of the Zoning Ordinance. We conclude that the superior court misinterpreted the applicable ordinances, and therefore reverse.

On a petition for writ of certiorari, "[t]he scope of review of the superior court is limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence." (Citation and punctuation omitted.) *City of Dunwoody v. Discovery Practice Mgmt., Inc.*, 338 Ga. App. 135, 138 (2) (789 SE2d 386) (2016); OCGA § 5-4-12 (b). "In the appellate courts, the standard of review is whether there is any evidence supporting the decision of the local governing body, not whether there is any evidence supporting the decision of the superior court." (Citation and punctuation omitted.) *Jackson County v. Earth Res., Inc.*, 280 Ga. 389, 391 (627 SE2d 569) (2006).

So viewed, the record reflects that New Image, a towing and wrecker service, leased a facility located in Morrow, Georgia in Clayton County's Heavy Industrial ("HI") zoning district. The property had previously been occupied by a fencing company. In October 2016, the Clayton County Planning and Zoning Administrator ("the Administrator") verified that towing and wrecking was a permitted use of the

2

property, and New Image was able to pursue its application for a business license. During the application process, New Image met with the Technical Review Committee ("TRC"), which included the County Water Authority, the Transportation and Development Department, the Planning and Zoning Department, and the Fire Department. The TRC directed New Image to submit a site plan to facilitate its review, but New Image refused to do so.[2] New Image's application for a business license was then suspended.

In an email dated March 2017, the Administrator responded to New Image's request for a written decision and confirmed that New Image was required to submit a proposed site plan to show how it would comply with parking and other development requirements under the Zoning Ordinance. New Image appealed this decision to the BZA, and requested the issuance of its business license.

At a hearing before the BZA, New Image challenged the application of sections 6.2 and 6.32 of the Zoning Ordinance to its use of the property. Section 6.2 requires compliance with the minimum development standards under Article 6, including the

---

[2] New Image has not articulated a reason for its refusal to submit a site plan before this Court or, as the record reflects, at any point during the proceedings below.

3

parking standards set forth in section 6.32, when a "structure, parking area or other site feature . . . [is] enlarged, *altered*, or expanded." (emphasis supplied).

New Image argued that the term "altered" related to physical alterations only; therefore, because it did not intend to improve or alter the physical features of the property, sections 6.2 and 6.32 did not apply, and the site plan was thus unnecessary. The Administrator testified that it was common to request a site plan during the business license application process, and that, in this instance, the site plan was necessary to evaluate the effects of the proposed change in the use of the land on the environment, and public safety and welfare. The BZA unanimously voted to uphold the Administrator's decision and found that New Image must submit a site plan to show its compliance with sections 6.2 and 6.32.

New Image filed a petition for writ of certiorari to the superior court, challenging the decision of the BZA. Following a hearing, the superior court reversed the BZA's decision. It strictly construed section 6.2 in favor of New Image as the property owner, and found that section 6.2 applies only when enlarging, altering, or expanding physical features of the property; therefore, New Image was not required to adhere to the parking standards in section 6.32. The superior court further found that New Image was not required to submit a site plan because there is no such

4

express requirement in Article 6. We granted the County's application for discretionary review, and this appeal followed.

1. In related enumerations of error, the County argues that the superior court erred by reviewing de novo the BZA's decision. The County further argues that the superior court misinterpreted section 6.2 by ignoring its plain meaning and impermissibly deferring to New Image's interpretation of that section. We conclude that the superior court erred in its construction of Article 6.

The County asserts that this matter does not involve construction of the Zoning Ordinance because the BZA made a *factual* finding that New Image's license application was subject to sections 6.2 and 6.32, and, with regard to the requirement for the site plan, the Administrator was exercising her administrative discretion. The County thus contends that, instead of reviewing the BZA's decision de novo, the superior court was confined to consider "[w]hether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights." *City of Atlanta Bd. of Zoning Adjustment v. Midtown North, Ltd.*, 257 Ga. 496, 499 (4) (360 SE2d 569) (1987).

The standard of review in a certiorari proceeding before a superior court varies depending on whether the matter involves an issue of fact or an issue of law. OCGA § 5-4-12 (b) provides that the superior court's "review [is] limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence." Because "the substantial-evidence standard is effectively the same as the any-evidence standard," courts apply the any-evidence standard when reviewing issues of fact. (Citation omitted.) *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997). But when reviewing a question of law, such as the interpretation of a zoning ordinance, the scope of review is de novo. See *SDS Real Property Holdings, Ltd. v. City of Brookhaven*, 341 Ga. App. 862, 864 (1) (802 SE2d 100) (2017).

Here, the BZA did more than simply make a factual finding; rather, it did so in the context of the Zoning Ordinance, specifically with respect to the meaning of "altered" in section 6.2. Thus, the superior court was compelled, as we are, to construe the ordinance in determining whether the agency overreached its authority. *Northside Corp. v. City of Atlanta*, 275 Ga. App. 30, 31 (1) (619 SE2d 691) (2005); see also *SDS Real Property Holdings, Ltd.*, 341 Ga. App. at 864 (1); *City of Atlanta Bd. of Zoning Adjustment*, 257 Ga. at 497-498 (1). And,

6

[w]e review the construction of a zoning ordinance under a de novo standard. . . . Zoning ordinances are to be strictly construed in favor of the property owner. Because statutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, they must be strictly construed and never extended beyond their plain and explicit terms.

(Citation and punctuation omitted.) *SDS Real Property Holdings, Ltd.*, 341 Ga. App. at 862. Thus, the superior court's error was not in the standard of review it applied, but in the conclusion it reached upon construing the ordinance. Importantly, the superior court failed to consider the common rules of statutory construction in its analysis.

Our principles of statutory construction are well-settled and apply in our construction of an ordinance. (Citation omitted.) *Daniel Corp. v. Reed*, 291 Ga. 596, 597 (732 SE2d 61) (2012).

As such, we look first to the text of the ordinance, and if the text is clear and unambiguous, we look no further, attributing to the ordinance its plain meaning. As we look to the words of the ordinance, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears. And we read the ordinance as a whole according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending its operation. Moreover, as we consider the meaning of an ordinance, we remember that it is not to be construed in a vacuum, but in relation to other ordinances of which it is a part, and all ordinances relating to the same subject matter are to be construed together, and harmonized wherever possible.

7

(Citations and punctuation omitted.) Id.; see also *City of Buchanan v. Pope*, 222 Ga. App. 716, 717, (1) (476 SE2d 53) (1996).

> Turning to the Zoning Ordinance, section 6.2 provides:
>
> No structure, parking area, or other site feature regulated by this ordinance shall be enlarged, altered, or expanded unless the minimum improvements required by this Article are provided to the property to the extent of its alteration or expansion. In the case of a substantial expansion, the portion of the site affected must meet the requirements of this Article. An alteration or expansion to an existing property is substantial when the area or square footage of the expanded or altered land (including property used for building space, parking, or storage) or structure, respectively, exceeds twenty (25) percent of the area or square footage of the existing land or structure, exclusive of the alteration or expansion.

Section 6.32 pertains to parking standards, generally, and subpart PK-03 applies to HI districts, providing minimum requirements for parking lots, such as paving, drainage, and lighting.

Guided by the principles set forth above, as we consider the term, "altered," in section 6.2, we look to its plain and ordinary meaning. *Daniel Corp. v. Reed*, 291 Ga. at 597. "Altered" is generally defined in broad terms as "made different in some way." https://www.merriam-webster.com/dictionary/altered. Next, we consider sections 6.2 and 6.32 in the context of Article 6 in its entirety. *Georgia Power Co. v.*

*Clark*, 69 Ga. App. 273, 277 (1) (25 SE2d 91) (1943) ("In construing ordinances, as in the case of statutes, those in pari materia should be consulted together, in order to arrive at the meaning of one."). The County points to section 6.1 of the Zoning Ordinance as the basis of the Administrator's authority to request a site plan. We find that it is also germane to our interpretation of sections 6.2 and 6.32.

(a) Section 6.1 provides:

All structures, land uses, land use changes, structural alterations, structural relocations, structural additions, and structural enlargements that are constructed, created, established, or otherwise occur after the effective date of this ordinance (except as may otherwise be provided within this ordinance) shall be subject to all Development Standards and regulations for the applicable zoning district.

This section expressly includes "land uses" and "land use changes" within the scope of Article 6. Therefore, Article 6 applies to New Image's business application – regardless of whether the features of the property are physically altered- because New Image proposed a change in the use of the property.

In light of the broad scope set forth in section 6.1, we conclude that the superior court's interpretation of the term "altered" in Section 6.2 is too narrow. See *SDS Real Prop. Holdings, Ltd.*, 341 Ga. App. at 866 (1) ("All parts of an ordinance relating to the same subject matter must be harmonized to reconcile conflicts, and any

9

section of an ordinance must be construed in relation to the whole ordinance of which it is a part.") (citations and punctuation omitted). Moreover, under section 6.32, certain parking standards are dependent upon the intensity of a property's use, e.g., a factory is subject to a different parking space ratio than a salvage, storage, or junk facility. Therefore, we must read section 6.2 to include alterations in the use of a property; a narrower interpretation is patently unreasonable. And, although zoning ordinances, as well as any ambiguities therein, are to be strictly construed in favor of the property owner, they "nevertheless must be given a reasonable construction." (Citation omitted.) *Bo Fancy Productions, Inc. v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 343 (1) (b) (478 SE2d 373) (1996). Viewing sections 6.2 and 6.32 in harmony with section 6.1, we find that the term "altered" in section 6.2 includes changes in land use unaccompanied by physical alterations to the site.

Here, there was evidence that New Image's proposed use varied from that of the former lessee. See *Jackson County*, 280 Ga. at 391 (under the appropriate standard of review, "we consider whether there is any evidence supporting the decision of the local governing body.") (citation omitted). As recognized by one of the BZA members, and testified to by the Planning and Zoning Division consultant at the BZA hearing, there is a significant difference in intensity of use between the

10

former fencing company's "laying wire" and New Image's proposed use involving "laying down any number of vehicles." Therefore, the BZA correctly found that New Image was altering the site and was thus required to comply with sections 6.2 and 6.32. The superior court erred in reversing the BZA's decision.

(b) Turning to the site plan, the County argues that the Administrator's authority to request one stems from section 6.1, as a means to gauge an applicant's compliance with Article 6 Although there is no specific reference to site plans in section 6.1 or 6.2, other sections of Article 6 contemplate the submission of one. Notably, pursuant to the section pertaining to parking standards, the Administrator may defer some parking requirements if she determines that the parking standards for a proposed use are excessive and if the applicant's site plan allocates space for future parking improvements. Clayton County Zoning Ordinance § 6.32, PK-03 (Q).

At the BZA hearing, the Administrator testified that a site plan is required during the application process so that the TRC can make informed zoning decisions and consider potential environmental and safety impacts of the proposed use. The consultant testified that, without a site plan, the County planners and the Administrator "have nothing to go by" and cannot make determinations regarding

essential criteria, such as the arrangement of the vehicles on the property or their ingress and egress.

New Image contends that the Administrator's authority to require a site plan during the business application process is arbitrary because there are no express guidelines set forth in the Ordinance governing her discretion to do so. In support of this argument, New Image cites to *Arras v. Herrin*, 255 Ga. 11 (334 SE2d 677) (1985). We are not persuaded.

In *Arras*, a convenience store owner brought a constitutional challenge against a county ordinance where he was denied a license to sell alcoholic beverages despite satisfying the technicalities of the applicable county ordinance. The ordinance at issue gave the local governing body unfettered discretion in determining both the fitness of an applicant to operate such a business and whether the business "is proper and to the best welfare and in the best interests of" the county. Id., 255 Ga. at 12. The Supreme Court of Georgia found that the applicant was denied due process because this language was impermissibly vague and afforded no control over the governing body's discretion. Id.

First, we note that the posture here is somewhat different from that in *Arras* because New Image has not yet completed the application process, which stalled upon

12

its unexplained refusal to submit a site plan; thus, there is no deprivation of a constitutional right at issue here, as in *Arras*. Moreover, the development standards that guide the business license application process are set forth in Article 6, and those include the submission of site plans. Finally, apart from selective language taken from the BZA hearing minutes,[3] New Image points to no evidence that would show that the requirement for the site plan was arbitrary in this instance. To the contrary, as discussed above, the Administrator explained that a site plan was necessary to determine whether New Image's proposed use was in compliance with sections 6.2 and 6.32. This explanation is entirely reasonable, especially in the absence of any evidence of harm New Image would suffer due to the requirement for the site plan. Cf. *Frazier v. Deen*, 221 Ga. App. 153, 154 (470 SE2d 914) (1996) (waiver of garage

---

[3] In an attempt to show arbitrariness, New Image points to a phrase in the Administrator's statement at the commencement of the hearing: "*we require site plans in certain instances and this is one of those instances . . .*" However, prior to this comment, the Administrator explained that the reason a site plan may be required is to facilitate her department's task of determining whether a property is permitted under the zoning classifications. Furthermore, in explaining the procedures for the pre-application meeting with the TRC, the Administrator later stated that they would typically request a site plan as part of that process. And, as discussed above, the Administrator adequately justified her rationale for requiring a site plan under these circumstances throughout the hearing.

placement covenant not arbitrary and capricious where there was no evidence of harm to plaintiffs).

Viewing Article 6 as a whole, and considering the record below in its entirety, the Administrator did not abuse her discretion in requiring New Image to submit a site plan during the business license application process, nor did the BZA abuse its discretion in upholding that decision. See *City of Atlanta Bd. of Zoning Adjustment*, 257 Ga. at 499 (4). Accordingly, the superior court erred in its holding that the site plan was not required.

Because we find that the superior court misconstrued the applicable sections of the Zoning Ordinance, we reverse the superior court's decision.

2. Based on our ruling in Division 1, we need not address the County's remaining enumeration of error.

*Judgment reversed. Doyle, P. J., concurs. Coomer, J., dissents.*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2**

14

A19A0298. CLAYTON COUNTY, GEORGIA v. NEW IMAGE

    TOWING AND RECOVERY, INC.

COOMER, Judge, dissenting.

Because the majority's interpretation of the applicable zoning ordinances expands the ordinances' plain and ordinary meaning, I find it necessary to dissent. "Zoning ordinances must be strictly construed in favor of the property owner and never extended beyond their plain and explicit terms." *Northside Corp. v. City of Atlanta*, 275 Ga. App. 30, 32 (2) (619 SE2d 691) (2005) (footnote omitted). "Where the language of the ordinance is plain and unambiguous, and does not lead to contradictory, absurd, or wholly impracticable results, it is the sole evidence of legislative intent and must be construed according to its terms." *Id*. (footnote and punctuation omitted).  It is well established that "[s]ince statutes and ordinances which restrict an owner's right to freely use his property for any lawful purpose are

in derogation of the common law, . . . ambiguities in the language of zoning ordinances should be resolved in favor of the free use of property, . . . and any ambiguity or uncertainty in a land regulation ordinance must be construed in favor of the free use of the land." *DeKalb County v. Post Apartment Homes, L.P.*, 234 Ga. App. 409, 410 (1) (506 SE2d 899) (1998) (citations and punctuation omitted).

Here, Article 6, Sections 6.1 and 6.2 of the Clayton County Zoning Ordinance states, in pertinent part that:

Sec. 6.1 - Introduction. All structures, land uses, land use changes, structural alterations, structural relocations, structural additions, and structural enlargements that are constructed, created, established, or otherwise occur after the effective date of this ordinance . . . shall be subject to all Development Standards and regulations for the applicable zoning district.

Sec. 6.2 - Expansion or Modification of Existing Uses and Structures. No structure, parking area, or other site feature regulated by this ordinance shall be enlarged, altered, or expanded, unless the minimum improvements required by this Article are provided to the property to the extent of its alteration or expansion. In the case of a substantial expansion, the portion of the site affected must meet the requirements of this Article. An alteration or expansion to an existing property is substantial when the area or square footage of the expanded or altered land (including property used for building space, parking, or storage) or structure, respectively, exceeds twenty (25) [sic] percent of the area or

2

square footage of the existing land or structure, exclusive of the alteration or expansion.

In its interpretation of these ordinances, the majority focuses on the meaning and application of the term "altered" in section 6.2 to reach its conclusion that the term "altered" "includes changes in land use unaccompanied by physical alterations to the site." However, the term that is most ambiguous and unaddressed in the majority opinion is "other site feature." A plain and ordinary reading of section 6.2 shows that certain minimum improvements required by the article must be performed when a "structure, parking area, or other site feature" will be "altered." Apparently, the majority has assumed the term "other site feature" includes all terms recited in the section 6.1,"Introduction."

To read section 6.2, as the majority infers, to include "land uses" and "land use changes" in the definition of "other site feature" is to impermissibly expand the ordinance beyond its explicit terms. The majority cites section 6.1's use of the terms "land use" and "land use changes," which are included in the list of occurrences that are subject to the ordinance's requirements, to conclude that changes in the Appellee's use of its land require it to satisfy the strictures of section 6.2. This

conclusion is contrary to the record and is not supported by ordinary principles of construction nor the common law.

> Construction of an ordinance is a question of law, subject to the canons of statutory construction, and it is the court's duty to determine and put into effect the intention of the lawmakers. In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry. Further, statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat their legislative purpose, and statutory construction must square with common sense and sound reasoning. These rules apply to the interpretation of city ordinances as well as statutes.

*City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002) (citations and punctuation omitted).

Section 6.1 does not provide definitions for the terms in section 6.2 and does not support the conclusion of the majority. Reading the sections in the context of the entire article of the ordinance, section 6.1 is tantamount to a jurisdictional statement. It sets out all the possible occurrences that are or may be subject to the substantive portions of the ordinance. Section 6.2 must operate within the jurisdictional limits established by section 6.1, but it does not necessarily apply to every possible

4

occurrence listed in section 6.1.  Section 6.2 only applies to  the alteration of any "structure, parking area, or other site feature regulated by" the ordinance.  The alteration in issue before the Court is not an alteration to a structure or parking area and, therefore, can only be subject to section 6.2 if it is an alteration to an "other site feature."  The term is not defined anywhere in the ordinance that is before the Court.

Reading the ordinance as a whole, the drafters intended section 6.2 to apply to physical alterations to structures or features of the land – changes to land uses were not contemplated by the ordinance.  The second and third sentences of section 6.2 indicate it applies to an "alteration or expansion" that is physical, tangible, and quantifiable and that expands or alters either "land...or [a] structure." In this context, the majority's conclusion that section 6.2 is unambiguous in its application to a change in land uses cannot be supported.

Turning to the issue of whether the site plan was required under the ordinance, the majority correctly states that there is no specific requirement for site plans in section 6.1 or 6.2 of the ordinance.  It concludes that other sections of the article contemplate the submission of one,[1] and relies on the testimony of the Administrator

---

[1] The majority cites to five other sections within article 6 of the ordinance that contemplate the submission of a site plan. Section 6.29 requires site plans be submitted and approved prior to the expansion or development of mobile home parks.

who stated that in certain instances a site plan is required during the business licenses application process. However, the majority should not infer requirements that are not expressly stated in the applicable ordinance. Otherwise, the purpose of written ordinances that have been debated in public and approved by an elected body become irrelevant, or worse, become tools of personal interpretation by individual bureaucrats. Our Court has held that the "testimony by county officers cannot change the plain meaning of an unambiguous ordinance[, and] neither should [a] county be allowed to extend the plain, objective intent of [an ordinance's terms] by testimony that county officers subjectively meant for it to attach to more than what [the ordinance] plainly stated." *Post Apartment Homes, L.P.*, 234 Ga. App. at 411 (1) (citations and punctuation omitted). Here, the county suspended the business license application process because New Image did not submit a site plan which, under the applicable ordinance, it was not required to do. Contrary to the majority's conclusion

---

Section 6.30 requires site plans before building six foot walls or privacy fences. Section 6.34 requires site plans for landscaping, but only if the building around which the landscaping will be planted required a site plan. Section 6.36 applies to lighting, but only where a work permit to install lighting has been applied for. Section 6.32 requires a site plan when an applicant seeks variance from county parking standards during construction of a parking lot. Each of these sections has specific, unambiguous requirements for when site plans must be provided. None of these provisions applies to Appellee's request for a business license.

6

that New Image failed to show that the county's requirement for the site plan was arbitrary in this instance, neither the majority's opinion nor the record reveals any ordinance that required such a submission by New Image.[2]

Accordingly, I would affirm the trial court and must respectfully dissent.

---

[2] The facts of this case fit squarely within the guidance provided by our Supreme Court in *Arras v. Herrin*, 255 Ga. 11 (334 SE2d 677) (1985). The majority seeks to distinguish *Arras* on the ground that the Appellant has not denied Appellee's business license and, consequently, has not deprived Appellee of a constitutional right. This distinction is not persuasive. In the present case, Appellant "suspended" Appellee's application process until such time as Appellee would submit a site plan. The process was "suspended" by the Administrator in October 2016 and confirmed by the BZA in May 2017. The Appellee has not reinstated the process, nor has it taken action to deny Appellee's application, which has the same result as denying the application. Because New Image has complied with all necessary requirements for obtaining a business license and is not required to submit a site plan in this instance, the county must issue the business license applied for. See *Mayor & Aldermen of City of Savannah v. TWA, Inc.*, 233 Ga. 885, 886 (214 SE2d 370) (1975) (where applicants for business license had complied with all the requirements necessary for obtaining business licenses, municipality was required to issue the licenses).

7