Coomer, Judge, dissenting.
Because the majority's interpretation of the applicable zoning ordinances expands the ordinances' plain and ordinary meaning, I find it necessary to dissent. "Zoning ordinances must be strictly construed in favor of the property owner and never extended beyond their plain and explicit terms." Northside Corp. v. City of Atlanta , 275 Ga. App. 30, 32 (2), 619 S.E.2d 691 (2005) (footnote omitted). "Where the language of the ordinance is plain and unambiguous, and does not lead to contradictory, absurd, or wholly impracticable results, it is the sole evidence of legislative intent and must be construed according to its terms." Id . (footnote and punctuation omitted). It is well established that "[s]ince statutes and ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law, ... ambiguities in the language of zoning ordinances should be resolved in favor of the free use of property, ... and any ambiguity or uncertainty in a land regulation ordinance must be construed in favor of the free use of the land." DeKalb County v. Post Apartment Homes, L.P. , 234 Ga. App. 409, 410 (1), 506 S.E.2d 899 (1998) (citations and punctuation omitted).
Here, Article 6, Sections 6.1 and 6.2 of the Clayton County Zoning Ordinance states, in pertinent part that:
Sec. 6.1 - Introduction. All structures, land uses, land use changes, structural alterations, structural relocations, structural additions, and structural enlargements that are constructed, created, established, or otherwise occur after the effective date of this ordinance ... shall be subject to all Development Standards and regulations for the applicable zoning district.
Sec. 6.2 - Expansion or Modification of Existing Uses and Structures. No structure, parking area, or other site feature regulated by this ordinance shall be enlarged, altered, or expanded, unless the minimum improvements required by this Article are provided to the property to the extent of its alteration or expansion. In the case of a substantial expansion, the portion of the site affected must meet the requirements of this Article. An alteration or expansion to an existing property is substantial when the area or square footage of the expanded or altered land (including property used for building space, parking, or storage) or structure, respectively, exceeds twenty (25) [sic] percent of the area or square footage of the existing land or structure, exclusive of the alteration or expansion.
In its interpretation of these ordinances, the majority focuses on the meaning and application of the term "altered" in section 6.2 to reach its conclusion that the term "altered" "includes changes in land use unaccompanied by physical alterations to the site." However, the term that is most ambiguous and unaddressed in the majority opinion is "other site feature." A plain and ordinary reading of section 6.2 shows that certain minimum improvements required by the article must be performed when a "structure, parking area, or other site feature" will be "altered." Apparently, the majority has assumed the term "other site feature" includes all terms recited in the section 6.1, "Introduction."
To read section 6.2, as the majority infers, to include "land uses" and "land use changes" in the definition of "other site feature" is to impermissibly expand the ordinance beyond its explicit terms. The majority cites section 6.1's use of the terms "land use" and "land use changes," which are included in the list of occurrences that are subject to the ordinance's requirements, to conclude that changes in the Appellee's use of its land require it to satisfy the strictures of section 6.2. This conclusion is contrary to the record and is not supported by ordinary principles of construction nor the common law.
Construction of an ordinance is a question of law, subject to the canons of statutory *813 construction, and it is the court's duty to determine and put into effect the intention of the lawmakers. In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry. Further, statutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat their legislative purpose, and statutory construction must square with common sense and sound reasoning. These rules apply to the interpretation of city ordinances as well as statutes.
City of Atlanta v. Miller , 256 Ga. App. 819, 820 (1), 569 S.E.2d 907 (2002) (citations and punctuation omitted).
Section 6.1 does not provide definitions for the terms in section 6.2 and does not support the conclusion of the majority. Reading the sections in the context of the entire article of the ordinance, section 6.1 is tantamount to a jurisdictional statement. It sets out all the possible occurrences that are or may be subject to the substantive portions of the ordinance. Section 6.2 must operate within the jurisdictional limits established by section 6.1, but it does not necessarily apply to every possible occurrence listed in section 6.1. Section 6.2 only applies to the alteration of any "structure, parking area, or other site feature regulated by" the ordinance. The alteration in issue before the Court is not an alteration to a structure or parking area and, therefore, can only be subject to section 6.2 if it is an alteration to an "other site feature." The term is not defined anywhere in the ordinance that is before the Court.
Reading the ordinance as a whole, the drafters intended section 6.2 to apply to physical alterations to structures or features of the land - changes to land uses were not contemplated by the ordinance. The second and third sentences of section 6.2 indicate it applies to an "alteration or expansion" that is physical, tangible, and quantifiable and that expands or alters either "land...or [a] structure." In this context, the majority's conclusion that section 6.2 is unambiguous in its application to a change in land uses cannot be supported.
Turning to the issue of whether the site plan was required under the ordinance, the majority correctly states that there is no specific requirement for site plans in section 6.1 or 6.2 of the ordinance. It concludes that other sections of the article contemplate the submission of one,[1] and relies on the testimony of the Administrator who stated that in certain instances a site plan is required during the business licenses application process. However, the majority should not infer requirements that are not expressly stated in the applicable ordinance. Otherwise, the purpose of written ordinances that have been debated in public and approved by an elected body become irrelevant, or worse, become tools of personal interpretation by individual bureaucrats. Our Court has held that the "testimony by county officers cannot change the plain meaning of an unambiguous ordinance[, and] neither should [a] county be allowed to extend the plain, objective intent of [an ordinance's terms] by testimony that county officers subjectively meant for it to attach to more than what [the ordinance] plainly stated." Post Apartment Homes, L.P. , 234 Ga. App. at 411 (1), 506 S.E.2d 899 (citations and punctuation omitted). Here, the county suspended the business license application process because New Image did not submit a site plan which, under the applicable *814 ordinance, it was not required to do. Contrary to the majority's conclusion that New Image failed to show that the county's requirement for the site plan was arbitrary in this instance, neither the majority's opinion nor the record reveals any ordinance that required such a submission by New Image.[2]
Accordingly, I would affirm the trial court and must respectfully dissent.

The majority cites to five other sections within article 6 of the ordinance that contemplate the submission of a site plan. Section 6.29 requires site plans be submitted and approved prior to the expansion or development of mobile home parks. Section 6.30 requires site plans before building six foot walls or privacy fences. Section 6.34 requires site plans for landscaping, but only if the building around which the landscaping will be planted required a site plan. Section 6.36 applies to lighting, but only where a work permit to install lighting has been applied for. Section 6.32 requires a site plan when an applicant seeks variance from county parking standards during construction of a parking lot. Each of these sections has specific, unambiguous requirements for when site plans must be provided. None of these provisions applies to Appellee's request for a business license.

The facts of this case fit squarely within the guidance provided by our Supreme Court in Arras v. Herrin , 255 Ga. 11, 334 S.E.2d 677 (1985). The majority seeks to distinguish Arras on the ground that the Appellant has not denied Appellee's business license and, consequently, has not deprived Appellee of a constitutional right. This distinction is not persuasive. In the present case, Appellant "suspended" Appellee's application process until such time as Appellee would submit a site plan. The process was "suspended" by the Administrator in October 2016 and confirmed by the BZA in May 2017. The Appellee has not reinstated the process, nor has it taken action to deny Appellee's application, which has the same result as denying the application. Because New Image has complied with all necessary requirements for obtaining a business license and is not required to submit a site plan in this instance, the county must issue the business license applied for. See Mayor & Aldermen of City of Savannah v. TWA, Inc. , 233 Ga. 885, 886, 214 S.E.2d 370 (1975) (where applicants for business license had complied with all the requirements necessary for obtaining business licenses, municipality was required to issue the licenses).